UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ETHLEEN S. JOHNSON,

                                        Plaintiff,

                        -vs-                                        13-CV-1055-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

_____

APPEARANCES:    LAW OFFICES OF KENNETH HILLER, Amherst, New York, for
                Plaintiff.

                WILLIAM J. HOCHUL, JR., United States Attorney (MICHELLE L.
                CHRIST, Special Assistant United States Attorney, of Counsel),
                Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated October 2, 2014 (Item

16).

        Plaintiff Ethleen S. Johnson initiated this action on October 17, 2013, pursuant to

the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.

Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure (*see* Item 8).   In response, the Commissioner has filed a

memorandum of law and cross-motion for judgment on the pleadings (*see* Item 13).  For

the following reasons, plaintiff's motion is granted, the Commissioner's cross-motion is

denied, and the matter is remanded for further proceedings.

## BACKGROUND

Plaintiff was born on October 4, 1983 (Tr. 138).[1]  On July 15, 2010, she filed an application for SSI alleging disability due to a learning disability, asthma, and anemia, with an onset date of January 1, 2002 (Tr. 136-141; 151).  The application was denied administratively (Tr. 88-91).  Plaintiff then requested a hearing, which was held before administrative law judge ("ALJ") Bruce Mazzarella on April 11, 2012 (Tr. 25-86).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  A Vocational Expert ("VE"), Jay A. Steinbrenner, also testified.

On May 7, 2012, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 12-20).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. § 416.920), the ALJ found that plaintiff had "severe" physical impairments (including borderline intellectual functioning, asthma, anemia, depression, adjustment disorder, personality disorder, and alcohol abuse/dependence disorder) but that these impairments, considered alone or in combination, did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 14-15).  The ALJ further found that plaintiff had no past relevant work history (Tr. 18).  He discussed the medical evidence in the record, including progress notes and opinions from treating and consultative medical sources, plaintiff's hearing testimony regarding her symptoms and limitations, and the

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

hearing testimony of the VE, and determined that plaintiff had the residual functional capacity ("RFC") to perform light work[2] with additional limitations that she should not work in unventilated areas that contain high concentrations of dust, fumes, and vapors and temperature extremes, and she is limited to simple, repetitive, and routine tasks in a low contact environment (Tr. 15-18).   Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC with some limitations would be able to perform the requirements of a significant number of jobs existing in the national and local economies (Tr. 19-20), the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the date her application was filed (Tr. 20).

The ALJ's decision became the final decision of the Commissioner on August 21, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that remand is required because the ALJ failed to consider whether plaintiff met the criteria of Listing 12.05(C), Intellectual Disability. Additionally, she argues that the ALJ's RFC determination was not based on substantial evidence in that the ALJ failed to explain why he did not incorporate the functional assessments of the psychological consultative examiner.  *See* Items 8-1, 15.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision is based on substantial evidence.  *See* Item 13.

---

[2]Light work involves lifting no more than 20 pounds occasionally, 10 pounds frequently, standing and/or walking for six hours in an eight-hour work day and sitting six hours in an eight-hour work day.  *See* 20 C.F.R. § 416.967(b); Social Security Ruling (SSR) 83-10. If someone can perform light work, the regulations provide that they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  *See* 20 C.F.R. § 416.967(b).

**DISCUSSION**

I.    **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

4

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was

substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.      Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.

If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. § 416.920(c); *see also* § 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found not to be disabled. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education,

7

and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Mazzarella determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since July 15, 2010, the application date (Tr. 14).  At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings.  *Id.*  At step four, the ALJ discussed the medical evidence of record and found that plaintiff had the RFC to perform light work as outlined in the regulations, with the following additional limitations: plaintiff should not work in unventilated areas that contain high concentrations of dust, fumes, and vapors and temperature extremes, and she is limited to simple, repetitive, and routine tasks in a low contact environment (Tr. 15-18).  At the final step, based on the testimony of the VE regarding the extent to which these limitations might erode the occupational base for unskilled light work, the ALJ determined that there are jobs existing in significant numbers

in the national economy that plaintiff could perform, considering her age, education, work experience, and RFC (Tr. 19-20).

## IV.    Plaintiff's Motion

### A.    Listing 12.05(c)

Plaintiff contends that remand is required because she satisfies the criteria of 12.05(C), Intellectual Disability, a Listing the ALJ altogether failed to consider. Impairments listed in Appendix 1 of the Regulations (the "Listings") are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995) (quoting *Dixon v. Heckler*, 785 F.2d 1102, 1103 (2d Cir. 1981)). Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." *Id.; see also* 20 C.F.R. § 416.920(a) (4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. *See Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements."). To satisfy the criteria of Listing 12.05, a claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e .... before age 22" and demonstrate the required level of severity by meeting the requirements of

subsection A, B, C, or D. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05. Subsection C of the Listing requires the claimant to demonstrate (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

Here, the ALJ considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.08 (personality disorders). He found that plaintiff did not satisfy these listings because she had no marked limitations in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation of extended duration (Tr. 15). In discussing the medical record, the ALJ referred to the consultative psychological examination of Dr. Renee Baskin. The ALJ noted that plaintiff read at a fifth grade level and her scores on the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") indicated intellectual functioning in the range of mild mental retardation (Tr. 17). However, despite this evidence of cognitive limitations, the ALJ, inexplicably, did not consider Listing 12.05 (intellectual disability).

The Commissioner argues that the ALJ "fully evaluated whether plaintiff met or equaled Listing 12.00 (mental disorders)." *See* Item 13-1, p.20. This is simply untrue with regard to Listing 12.05. There is no discussion of the validity of plaintiff's IQ score or the manifestation of deficits in adaptive functioning prior to the age of 22. In regard to plaintiff's IQ scores, Dr. Baskin's report appears to be internally inconsistent. Dr. Baskin noted that plaintiff "made a decent effort to do her best," but it appeared that she "gave up prematurely, all of which may have had a negative impact on final scores." (Tr. 312). Despite this, Dr. Baskin further opined that "[t]he results of the evaluation are considered to be a valid and reliable estimate of current functioning. However, it may be a slightly

lower estimate due to slow responding and some giving up." *Id.*   Dr. Baskin also stated that plaintiff's "true cognitive abilities lie closer to the borderline range . . ." and that her cognitive limitations should not "preclude her ability to work in a supervised workplace." (Tr. 312-13).[3]

Even crediting Dr. Baskin's opinion that plaintiff's full scale IQ score of 65 is a "slightly lower estimate of plaintiff's current functioning" (Tr. 312), there is no evidence that plaintiff's actual cognitive functioning is in the borderline range and that her actual IQ is over 70.  Accordingly, any determination by the ALJ that plaintiff has a valid IQ score above 70, had it actually been so determined, would not have been based on substantial evidence.  Additionally, the evidence indicates that plaintiff did not complete high school, attended special education classes while in school, and received SSI as a child (Tr. 237). She reads at a fifth grade level and can add and subtract but is "not good with the multiplying and dividing" (Tr. 41-42). Courts have found circumstantial evidence—such as evidence that a claimant attended special education classes, dropped out of school before graduation, or had difficulties in reading, writing, or math—sufficient to infer deficits in adaptive functioning prior to age 22.  *MacMillan v. Astrue*, 2009 WL 8595781, *5 (N.D.N.Y. Nov. 17, 2009), *Report and Recommendation adopted by* 2009 WL 4807311 (N.D.N.Y. Dec. 7, 2209).  The Second Circuit recently explained that "adaptive functioning" refers to an individual's "[ ]ability to cope with the challenges of ordinary everyday life," and that "if one is able to satisfactorily navigate activities such as liv[ing] on [one's] own, tak[ing] care

---

[3]   The court takes judicial notice that a WAIS–IV category of "borderline" covers a range of test scores between 70 and 79. *See,* Molly Froerer, WAIS Score Interpretation, Sciences 360, www.sciences360.com/index.php/wais-score-interpretation-12962/ (last visited Nov. 6, 2014).

of ... children ... without help ..., pay[ing] bills, and avoid[ing] eviction, one does not suffer from deficits in adaptive functioning." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (quotation marks and citations omitted). Here, while plaintiff can attend to her personal grooming needs, she lives with others, does not cook or shop, and does only some light household chores such as sweeping (Tr. 34, 60-63). She does not have custody of her six children due to her inability to care for them, she does not hold a driver's license, cannot manage her own funds, and her socialization is minimal to non-existent (Tr. 36, 38, 313-14). Thus, there is substantial evidence in the record of deficits in adaptive functioning initially manifested prior to the age of 22.

As for the second prong, the test for evaluating whether a claimant's impairment imposes "an additional and significant work-related limitation of function" is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." *MacMillan v. Astrue*, 2009 WL 8595781, at *6. The regulations direct an ALJ to "assess the degree of functional limitation the additional impairment[ ] imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment[ ], as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A). Thus, the proper test for evaluating an additional impairment under Listing 12.05(C) is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *accord Baneky v. Apfel*, 997 F.Supp. 543, 546 (S.D.N.Y. 1998) ("This Court holds that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under section 12.05(C) is the severity test ..."). At step two, the ALJ found that, in addition to her cognitive deficits,

12

plaintiff's asthma, anemia, depression, adjustment disorder, personality disorder, and alcohol abuse/dependence disorder were severe impairments that "interfere with a full range of work activities" (T. 14). As such, these impairments impose additional and significant limitation of function as required by 12.05(C).

Based on the foregoing, the court finds that the ALJ erred in failing to consider Listing 12.05(C). *See Burdick v. Comm'r,* 2014 WL 2533548, * 6 (D.Vt. June 5, 2014) (given plaintiff's full scale IQ score of 69, verbal IQ of 65, and verbal comprehension IQ score of 70, along with evidence of deficits in adaptive functioning prior to age 22 and finding of other severe impairments, ALJ should have considered Listing 12.05(C)).  The court further finds that the record does not contain persuasive evidence of plaintiff's cognitive functioning.  Had the ALJ considered Listing 12.05(C), a determination of not disabled would not have been supported by substantial evidence.  However, the court cannot determine from the existing record that plaintiff fulfills all the requirements of Listing 12.05(C).  Under the circumstances, the appropriate remedy is remand for consideration of Listing 12.05(C).  On remand, the ALJ should seek clarification from Dr. Baskin or otherwise supplement the record with regard to plaintiff's cognitive functioning, and must explicitly identify the information relied on in assessing the first prong of Listing 12.05(C).[4]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 8) is granted, the Commissioner's cross-motion for judgment on the pleadings (Item 13) is

---

[4] Given the disposition of the case, it is unnecessary to address plaintiff's alternate argument, that the ALJ erred in failing to incorporate all of Dr. Baskin's functional assessments.

denied, and the case is remanded for further proceedings consistent with this Decision and

Order.  The Clerk of the Court is directed to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: December 3,  2014